(March 31, 1923.)

CHARLES VINYARD and W. A. THOMPSON, Appellants, v. NORTH SIDE CANAL COMPANY, LIMITED, a Corporation, and C. C. WILBURN, F. W. HASTINGS, F. E. SAYRE, H. E. HARRY, M. H. WHALEY, A. F. McLEOD, E. W. RIEMAN, GUY SAUNDERS and D. F. RAUM, Directors of the NORTH SIDE CANAL COMPANY, LIMITED, Respondents.

[223 Pac. 1072.]

Action to Compel Delivery of Water for Irrigation—Carey Act Construction Company—Operating Company—Carey Act Contract—Right of Contract Holder—Duty of Company—Original Appropriation—Right of Contract Holder in Subsequent Appropriation—Maintenance.

    1. When a Carey Act construction company contracts to deliver 1/80 of a second-foot of irrigation water per acre to a settler and contract holder, and it develops that it cannot deliver him that amount of water out of the appropriation made by it at the time

Publisher's Note.

    1. Priority as between contract holders under a Carey Act project, see note in 26 A. L. R. 296.

the contract is made, it can be compelled to deliver him the required amount of water out of a later appropriation if the same is not required to satisfy prior rights of other water users.

2. A Carey Act holding and operating company is bound to deliver the water held by it to those who are legally entitled to it by virtue of their contracts with the construction company.

3. The contractual provision limiting the maintenance which can be charged by a Carey Act construction company while in control of the system and of the operating company is not binding on the operating company after it acquires control of the system, and passes out of the control of the construction company.

4. One who seeks to compel a Carey Act operating company to deliver water to him must pay, or offer to pay, the proper maintenance charge.

APPEAL from the District Court of the Eleventh Judicial District, for Jerome County. Hon. T. Bailey Lee, Judge.

Action to compel performance of contract to deliver water for irrigation. Judgment for defendants. *Affirmed.*

Eldridge & Morgan, for Appellants.

It is the duty of the canal company to distribute according to its articles of incorporation the waters equally and ratably among its stockholders. The corporation is merely a holding company or trustee for the use and benefit of the settlers. (*Hobbs v. Twin Falls Canal Co.*, 24 Ida. 380, 133 Pac. 899; *State v. Twin Falls Salmon River Land & Water Co.*, 30 Ida. 41, 166 Pac. 220.)

In case of ambiguity in a deed or where it admits of two constructions, it will be construed most strongly against the grantor or most favorably to the grantee. (*United Thacker Coal Co. v. Red Jacket Jr. Coal Co.*, 232 Fed. 49, 146 C. C. A. 241; *Alabama Corn Mills Co. v. Mobile Dock Co.*, 200 Ala. 126, 75 So. 574; *Younger v. Moore*, 155 Cal. 767, 103 Pac. 221; *Brown v. State*, 5 Colo. 496; *Dunn v. English*, 23 N. J. L. 126; *Allerton v. New York etc. R. Co.*, 199 N. Y. 489, 93 N. E. 270; *Kentucky Diamond Min. etc.*

4. Construction of irrigation contracts with consumers, see note in L. R. A. 1916F, 257.

*Co. v. Kentucky Transvaal Min. Co.*, 141 Ky. 97, Ann. Cas. 1912C, 417, 132 S. W. 397.)

"Contracts between corporations having a common directory are regarded by the courts very much with the same suspicion as contracts between individual directors and their corporations." (2 Thompson on Corporations, 2d ed., sec. 1242.)

A contract and contractual obligations will be construed against the makers instead of the settlers in this case. (6 R. C. L. 854.)

A. B. Barclay, Walters, Hodgin & Bailey and R. P. Parry, for Respondents.

The interpretation placed upon agreements by the parties may be allowed to vary the terms of the agreement only when there is some ambiguity or uncertainty; there is clearly no ambiguity or uncertainty here, and therefore such interpretation does not apply. (4 Page on Contracts, sec. 2034, p. 3515; *Lesamis v. Greenberg*, 225 Fed. 449, 140 C. C. A. 481; *State v. Water Supply Co.*, 19 N. M. 27, 140 Pac. 1056, L. R. A. 1915A, 242; *Pierce v. Merrill*, 128 Cal. 464, 79 Am. St. 56, 61 Pac. 64.)

As between entrymen on a Carey Act project, there are no priorities, but the appellants here are attempting to acquire a priority over the other users because of delivery of excess water. (*Sanderson v. Salmon River Canal Co.*, 34 Ida. 145, 199 Pac. 999.)

McCARTHY, J.—On January 2, 1903, the state of Idaho and the Twin Falls Land & Water Company entered into a contract by which the latter was to construct an irrigation project for the irrigation of certain lands under the Carey Act (U. S. Comp. Stats., sec. 4685) by means of 3,400 second-feet of the waters of Snake River appropriated for that purpose. The lands so proposed to be irrigated were partly on the north side and partly on the south side of Snake River. Thereafter a corporation known as the North Side Twin Falls Land & Water Co. (hereinafter

designated as the Construction Co.) acquired the rights of the original company and took its place as to the irrigation of lands on the north side of the river. On April 15, 1907, the state and the construction company entered into a contract by which the latter was to construct an irrigation project for the irrigation of 30,000 acres of said land on the north side of the river, known as the first segregation. It is clear that the parties originally contemplated the water should be furnished from the natural flow of the river, and not from storage water. The company was to furnish 1/80 of a cubic foot per second for each acre of land and a proportionate interest in the canal. While it retained control of the project it was to charge as maintenance not to exceed thirty-five cents per acre. On August 25, 1907, the state of Idaho and the construction company entered into a contract by which the latter was to construct an irrigation project for the irrigation of certain of the lands on the north side of the river known as the second segregation. This was to be a storage or reservoir project, the water to be stored in a reservoir to be known as Wilson Lake Reservoir. On January 2, 1909, the state of Idaho and the construction company entered into a contract by which the latter was to construct an irrigation project for the irrigation of certain other land on the north side of the river known as Segregation No. 3. This was to be a storage or reservoir project, the water to be stored in the Jerome reservoir or such other reservoirs as might be provided. The Wilson Lake and Jerome reservoirs turned out to be unsatisfactory. For this reason, on March 27, 1913, the state and the construction company entered into an agreement by which the latter was to procure to be stored at Jackson Lake reservoir, or elsewhere at its option, an amount of water in excess of 170,000 acre-feet to be used on the lands of the project in lieu of water stored in Wilson Lake or Jerome reservoir. The contract provided:

"4. It is further understood and agreed that if more than 32,000 acres are sold under what is generally known as the First Segregation, being the lands included in Segrega-

tion List No. 6, in Lincoln County, together with other lands adjacent thereto, then storage shall be provided for such additional lands sold in excess of 32,000 acres to the same extent measured at the Milner Dam as is provided for lands on what is commonly known as the Second Segregation in Lincoln County, State of Idaho, being the lands included in Segregation List No. 13, but in case 32,000 acres are not sold on said First Segregation, then any water represented by the difference between the amount sold and the total acreage of 32,000 acres may be used on other lands under the canal system. . . . .

"8. It is anticipated that the said party of the second part will procure more water to be impounded at Jackson Lake than is called for by the terms of this agreement and any additional water so impounded may be used for the irrigation of other lands, or for other purposes."

More than 32,000 acres has not been sold under the first segregation. February 25, 1913, the United States and the Kuhn Irrigation and Canal Co. entered into a contract by which the latter was to pay the cost of increasing the height of the Jackson Lake Dam 17 feet, and was to receive 10,000 acre-feet below elevation "6572," and the additional amount of water which could be delivered from the reservoir on account of the said increase in the height of the dam. The 10,000 acre-feet was acquired in exchange for a right owned by the Kuhn Company, known as the Perrine right, is used on the first segregation, and is not in question here, the controversy being solely as to the additional amount. The company was to pay the United States its proportionate share of the cost and expense of operating and maintaining the reservoir and delivering water therefrom. This contract was performed. On March 12, 1918, the Kuhn Irrigation and Canal Co. assigned and transferred to the construction company all its rights and interests in the said contract with the government. On March 12, 1918, the construction company assigned to the respondent North Side Canal Company (hereinafter designated as the operating company) all its rights and interests in said

contract with the government, subject to the right of the second and third segregations to 170,000 acre-feet of the stored water, subject also to the right of all persons under the first segregation who had contracted with the construction company for an additional or supplemental water right, about which more will be said later. The respondent operating company is a holding, or operating, company, organized in accordance with the Carey Act and the state statutes, for the purpose of receiving title to and operating the irrigation project after it has been completed by the construction company and approved by the state. The land owners and contract holders on the project are the shareholders of the operating company, and it is the instrumentality through which they operate the canal after it is turned over to them by the construction company. Appellants Vinyard and Thompson are contract holders of the construction company and shareholders of the respondent operating company. The individual respondents are directors of the operating company. On April 23, 1907, appellant Vinyard entered into a contract with the construction company by which he acquired 80.56 shares of its capital stock, each of which entitled him to receive 1/80 of a second-foot of water. The construction company got into financial difficulties, and the management of the business was taken over by a committee of the bondholders. The operating company, and the construction company before it, had been furnishing irrigation water to the land holders under the first segregation exclusively from the direct flow of Snake River and not from the Jackson Lake reservoir. The water right thus furnished is not sufficient in the latter part of the irrigation season some years, and this was true in 1920. In 1914 the construction company made contracts with certain land owners under the first segregation by which it agreed to furnish for use on their land supplementary water from Jackson Lake reservoir, sufficient to cover any shortage in the water right, and the contract holders agreed to pay as maintenance their *pro rata* share of the actual expense of administration and operation instead of the maximum

thirty-five cents per acre as provided by the original contracts. Appellant Vinyard declined to enter into such a contract. The contract under which Thompson claims, having acquired it by assignment, provides that he shall pay the actual cost of maintenance instead of the maximum charge of thirty-five cents an acre. In their answer the respondents concede that appellant Thompson is therefore entitled to share in the Jackson Lake storage water, and the case becomes academic so far as he is concerned. During the years 1916, 1917 and 1918 the operating company, having an excess of water from Jackson Lake, gratuitously furnished a supplementary right to the lands under the first segregation. In the year 1920 it refused to furnish the water to contract holders under the first segregation except those who had signed the supplementary contract. The complaint alleges that in July, 1920, there was 245,000 acre-feet of storage water available for the North Side Twin Falls project, 70,000 acre-feet of which was available for the lands under the first segregation so as to enable deliveries to be made to said lands, including appellant's, of 1/80 of a second-foot per acre throughout the irrigation season. The answer admits that at said time there was approximately 245,000 acre-feet of storage water at the Jackson Lake reservoir available for the lands on the North Side project entitled thereto. The court found that the construction company acquired a greater amount of storage water than was necessary under existing contracts, to supply those entitled thereto, and contemplated using such surplus upon certain lands to be irrigated elsewhere. These lands comprise about 30,000 acres. The court did not find just how much surplus storage water there is. However, since the maximum amount dedicated to the second and third segregations is only 170,000 acre-feet, and since only about 139,000 acres have been taken up by contract holders under those segregations, it appears that appellant is right in his contention that in 1920 there were about 70,000 acre-feet available.

Appellant Vinyard on the above facts demands that the court decree to him a right to the use of Jackson Lake storage water ratably with all other contract holders under the first segregation and that the court order respondents to deliver such water to him. He concedes in his amended complaint that the rights of the contract holders under the second and third segregations to the storage water are superior to his own.

The lower court held that the only contract holders under the first segregation entitled to receive Jackson Lake storage water are those who entered into the supplementary contract, and appellant Vinyard not being one of these, decided against him. The appeal is from the judgment. The many assignments of error may all be summed up in the one point that the court erred in finding and in holding that appellant Vinyard and others in his class have not the right to demand said storage water.

The main contentions of appellant Vinyard are as follows: (1) The furnishing of storage water to him in 1916, 1917 and 1918 placed an interpretation upon the contract in favor of appellant which should be recognized by the court; (2) that said acts constituted a dedication under the constitution; (3) that he has a right to said storage water under the various contracts pertaining to his water right. Respondents contend that the various contracts pertaining to appellant's water right give him a right only to the natural flow of Snake River, and no right to any of the storage water, that, after delivering 10,000 acre-feet to the lands under the first segregation, 170,000 acre-feet to the lands under the second and third segregations, and a sufficient amount of water to the contract holders under the first segregation, who entered into the supplementary agreement, the operating company has a right to furnish the excess of the storage water, if any, to other lands within the project under new contracts to be let by the construction company.

We will consider appellants' main contentions in the above order. The rule that a court will accept the inter-

pretation placed upon a contract by the parties, as shown by their conduct in carrying it out, is applicable only where the language of the contract is sufficiently ambiguous or uncertain to make construction necessary. For reasons which will be given when we later consider and interpret the various contracts which are pertinent, we think that the contracts upon which appellant's rights rest are not ambiguous or uncertain and the rule has no application.

Const., XV, 4, reads as follows: "Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law."

The gratuitous distribution of water does not constitute a dedication under this section. The word "distributed" must be read in the light of the words "sold" and "rented" which precede it, and the words "upon payment therefor" which follow.

We come now to a consideration of the contracts. Under the contract between the state and the construction company, and the one between the construction company and appellant, the construction company was bound to furnish appellant 1/80 of a second-foot of water for each acre of land. This court has held that under a Carey Act contract the interest of the settler is a proportionate interest in the entire canal system and the water appropriation. (*State v. Twin Falls Canal Co.*, 21 Ida. 410, at 439, 121 Pac. 1039,

L. R. A. 1916F, 236; *State v. Twin Falls Salmon River etc. Co.*, 30 Ida. 41, at 59, 166 Pac. 220; *Sanderson v. Salmon River Canal Co.*, 34 Ida. 303, 26 A. L. R. 292, 200 Pac. 341.) This, however, relates to the rights of the settlers in the water actually available. It does not mean that a company which agrees to furnish 1/80 of a second-foot of water for each acre can furnish less, and then defend on the ground that the contract holder has received a proportionate interest in the water which it has. (*Tapper v. Idaho Irr. Co.*, 36 Ida. 78, 210 Pac. 591.) The original appropriation made for the first segregation turned out to be insufficient, and if the company afterwards made another appropriation, and acquired a further water right, to which no other contract holders have a prior claim, it would follow that the contract holders under the first segregation could force the construction company to apply this new water right for the purpose of supplementing their original water right, to the extent necessary in order to bring about a compliance with their contracts. A Carey Act construction company in making the appropriation acts for the settlers and contract holders. (*Adams v. Twin Falls-Oakley L. & W. Co.*, 29 Ida. 357, 161 Pac. 322; *State v. Salmon River etc. Co., supra; Sanderson v. Salmon River Canal Co.*, 34 Ida. 145, 199 Pac. 999.) Since the appropriation of Jackson Lake water was made, under the contract with the state, for the benefit of the contract holders on the second and third segregations, it was their appropriation and their rights are superior to any claim on the part of land holders under the first segregation. But, after their rights are satisfied, the construction company has an excess of Jackson Lake water which can be applied either to supplement the water rights of the contract holders under the first segregation, or to satisfy new contracts which may be made by the company for the irrigation of new lands. A Carey Act company will be enjoined from selling any more contracts when the exercise of rights under contracts already sold will consume the available water. (*State v. Twin Falls Salmon River etc. Co., supra.*) The same principle

leads to the conclusion that the construction company should be compelled to use its excess storage water for the purpose of complying with existing contracts before making new contracts for the use of that water upon other lands. The respondent operating company is the representative of the construction company, incorporated by it for the purpose of distributing the water, (*Sanderson v. Salmon River Canal Co.,* 34 Ida. 145, 199 Pac. 999.) It succeeded to the rights of the construction company, and it is its duty to distribute the water to those who have a legal right to it under contract with the construction company. (*State v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *Gess v. Nampa & Meridian Irr. Dist.,* 33 Ida. 189, 192 Pac. 474.)

Respondents contend that paragraph 4 of the contract of March 27, 1913, between the state and the construction company prevents the use of any of the storage water in question on lands under the first segregation. We do not so construe it. It is apparent that the parties to that contract contemplated that the water right dependent on the natural flow of the river would be sufficient to satisfy the rights of the contract holders under the first segregation, if it was limited to 32,000 acres. The contract provides that a storage right shall be provided for lands sold in excess of 32,000 acres. It does not expressly provide that storage water shall never be provided for the first segregation if less than 32,000 acres are sold, and this is not a reasonable or just implication from the language used. We cannot construe this contract to prevent the application of excess storage water to lands under the first segregation in order to satisfy the rights of the contract holders, where no other prior rights have attached.

Respondents contend that the court cannot grant the relief prayed for by appellant because to do so would adversely affect the rights of other parties who are not before the court in this action. Respondents claim that the record in this case shows there are two classes of indispensable parties who have not been joined in this action,—first,

the contract holders under the second and third segregations; second, the contract holders under the first segregation who have entered into the supplementary contract. In the 25th specification of error appellant claims the court erred in deciding that the rights of the second and third segregations to 170,000 acre-feet of the storage water are prior to appellant's. This, however, is not in accordance with either the allegations of his amended complaint or his prayer for relief. The pleading concedes the priority of such rights. Therefore the rights of the contract holders under the second and third segregations could not be prejudicially affected by any decree which the court could make in this action, and they are not indispensable parties. We conclude that the contract holders under the first segregation who have entered into the supplementary contract are not indispensable parties. A decision that all contract holders under the first segregation are entitled to the use of the excess storage water protects the legal rights of those who have entered into the supplementary contract as well as those who have not.

We come now to a question which seems to us to be raised by the record although it has not been referred to by counsel for either side. The contract between the state and the construction company, and the one between the construction company and the appellant Vinyard and the other contract holders provide that, while the construction company retains control of the operating company and system, it shall charge the purchasers of water rights not to exceed the sum of thirty-five cents per acre for each acre owned, for maintaining, operating, managing and keeping in repair the system, and that, if that sum is insufficient, the construction company will furnish the additional funds necessary to supply the deficiency. In the supplementary contracts which it made with many of the water users on the first segregation the construction company got them to waive this provision of the original contract, and to agree to pay it as maintenance their *pro rata* share of the actual cost

of operation. This contract the appellant Vinyard refused to enter into, and in this respect we conclude he acted within his rights under the original contract as against the construction company. The trial court found that prior to the institution of this suit the respondent operating company had taken over the maintenance and operation of the system, and was in possession and control of the same, and that the construction company was not in control of respondent operating company. This finding is supported by the evidence. An allegation to this effect is also found in paragraph 19 of the amended complaint. The provision of the contract limiting the maintenance charge to thirty-five cents per acre is not binding upon the operating company. By its very terms it is confined to the period when the construction company was in control. The defendant operating company can charge as maintenance, its share of the cost of maintaining and operating the reservoir, and the cost of maintaining and operating that part of the system by which the storage water is delivered. As a condition to appellant Vinyard's right to receive the storage water, he is bound to pay the operating company his *pro rata* share of the actual cost of maintenance instead of thirty-five cents per acre. This is a suit in equity and he must offer to do equity. Nowhere in his complaint does he offer to pay as maintenance his *pro rata* share of the additional expense which will be occasioned by the delivery to him of the storage water. While he does not expressly so state in the complaint, it is fairly to be inferred from his pleading, and from the brief and argument of his counsel, that he contends he has a right to stand on the thirty-five cents maintenance charge, and to have the surplus storage water delivered to him for that. Therefore the complaint does not state a cause for equitable relief and the demurrer should have been sustained. Moreover, appellant Vinyard introduced no evidence to the effect that he was willing and ready to pay any additional maintenance, and seemed on the trial to stand upon the provision of the original contract for

thirty-five cents per acre. For these reasons the judgment is affirmed, with costs to respondents.

Budge, C. J., and Dunn, William A. Lee, and Wm. E. Lee, JJ., concur.

## ON REHEARING.

(October 3, 1923.)

McCARTHY, J.—In the original opinion, we held that the judgment should be affirmed because appellants did not offer, in their complaint, to pay maintenance based on the actual cost of operation. In a petition for rehearing, they claim that the court has misconstrued the record in this regard. After re-examining the record, we are not convinced that we have misconstrued it. However, on re-argument, counsel for appellants stated, and counsel for respondents admitted, that appellants have been for some years paying the same maintenance as the contract holders who have been receiving the Jackson Lake storage water, i. e., maintenance based on the actual cost of operation. Regardless of the condition of the record, in the face of this admission we withdraw the last part of the original opinion touching appellants' duty to offer to pay increased maintenance as a condition precedent to any relief.

Counsel for respondents, in a petition for rehearing, suggest that the court erred in saying:

"The 10,000 acre-feet was acquired in exchange for a right owned by the Kuhn Company, known as the Perrine right, is used on the first segregation, and is not in question here, the controversy being solely as to the additional amount."

This question not being in issue, and the facts not being exactly clear, we conclude that the original opinion should be modified by striking from the sentence above quoted the clause "is used on the first segregation."

Respondents also contend that this court erred in concluding, first, that the second and third segregations are only entitled to 170,000 acre-feet of the Jackson Lake stor-

age; and, second, that there exists a surplus of Jackson Lake storage water above that to which the second and third segregations are entitled. The amended complaint alleges that in July, 1920, there were 245,000 acre-feet of storage water available to respondents in Jackson Lake reservoir, of which 70,000 acre-feet were available for use on the first segregation. The answer admits that there were 245,000 acre-feet available, but denies that any of it was for the first segregation. The court found that the estimated amount of the Jackson Lake water available to respondents was 315,000 acre-feet (finding 26, page 286). It also found that the second and third segregations were entitled to a prior right to 170,000 acre-feet of the Jackson Lake storage water measured at the intakes of the Jerome and Wilson Lake reservoirs (finding 58, page 299). The same language is found in the third conclusion of law (page 302) and in the judgment (page 305). The court made no finding as to the amount of water remaining after satisfying the needs of the second and third segregations. The principal defense in the answer was that appellants could never be entitled to receive any of the Jackson Lake storage water because this was not contemplated under the contract. Judging from findings 26 and 50, conclusion of law No. 2, and paragraph 2 of the judgment, the trial court adopted and acted upon this theory. We rejected this theory, using the following language:

"The original appropriation made for the first segregation turned out to be insufficient, and if the company afterwards made another appropriation, and acquired a further water right, to which no other contract holders have a prior claim, it would follow that the contract holders under the first segregation could force the construction company to apply this new water right for the purpose of supplementing their original water right, to the extent necessary in order to bring about a compliance with their contracts."

The greater part of the argument and brief of respondents on the original hearing was taken up with this theory. The further point was suggested, though not emphasized, that the

court could not exercise jurisdiction without adversely affecting the rights of third parties who were not joined, to wit: the contract holders on the second and third segregations.

We were not unmindful of what we said in *Sanderson v. Salmon River Canal Co.,* 34 Ida. 145, 199 Pac. 999:

"*Mandamus* is not a proper remedy to decide conflicting interests. If third parties have rights or interests adverse to those of plaintiff, *mandamus* is not the proper remedy."

This applies with almost equal force to an action like the present which, though not a *mandamus* proceeding in form, yet seeks the same object, to wit: the delivery of water by an irrigation company. Since the court found that the prior right of the second and third segregations was to 170,000 acre-feet, and it was admitted that there were 245,000 acre-feet in the Jackson Lake reservoir, we assumed that the rights of the second and third segregations could not be adversely affected. This was, perhaps, because this aspect of the matter was not emphasized. It is strongly emphasized in the petition for rehearing.

Respondents point out that, under the contract by which the state permitted the construction company to substitute the Jackson Lake storage water for water originally planned to be stored in Wilson Lake and Jerome reservoirs, it is provided that an amount of water in excess of 170,000 acre-feet shall be delivered at the intake of Wilson Lake and Jerome reservoirs. (Respondents' Exhibit "C.") It is apparent from the record and is a matter of common knowledge that there must be a considerable loss of water in transit. The contracts between the construction company and the water users on the second and third segregations provide that water shall be measured to them at the place of diversion from the main laterals of the irrigation system. (Respondents' Exhibits "A," page 15, and "B," page 8.) In deciding how much water is necessary to insure them their contract amounts, it is necessary to make allowance for some loss in transit between the outlet of Wilson Lake and Jerome reservoirs and the place of delivery. If the

water is stored in the last-named reservoirs for any length of time, there is bound to be some loss. The trial court did not find the amount of the loss by reason of any of the causes above mentioned, yet such a finding is necessary to enable this court to determine whether or not there is a surplus after delivering the required amounts to the second and third segregations.

In view of the provisions in the several contracts, the findings, the judgment and the argument, we assumed, on the original hearing, that 170,000 acre-feet had been dedicated to the second and third segregations and constituted the extent of their priority. In view of the turn the case took on rehearing, we conclude that there may be some question as to the correctness of this assumption. The court's findings support it, but it must be remembered that they are not binding on the contract holders under the second and third segregations who were not parties. The purpose of the contract by which the state permitted the construction company to substitute the Jackson Lake project for the original project was to fulfill the provisions of the original contracts. It is provided that the company shall procure in excess of 170,000 acre-feet. The water users on the second segregation are entitled, under their contract, to one-eightieth of a cubic foot per second for each acre, and those on the third segregation are entitled to one one-hundredth of a cubic foot for each acre. (Respondents' Exhibit "A," page 15.)

Questions arise as to whether the priority of the second and third segregations is confined to 170,000 acre-feet, or whether they have a prior right to whatever amount of Jackson Lake storage water may be necessary to give them the amount required by their contracts, and, if the latter, what that necessary amount is. These questions should not be decided without making them parties.

It would be useless and idle to enter a judgment to the effect that appellants are entitled to the use of surplus water after the rights of the second and third segregations are satisfied unless it is determined that there is such a

surplus. There is no finding on this point. The action was brought with reference to conditions in 1920, but appellants seek a continuing judgment. This makes it necessary to determine not only whether there was a surplus in 1920, but also whether there is a continuing surplus, which resolves itself into the question whether there is a surplus in the average year. There is no finding on these matters.

We conclude that the contract holders on the second and third segregations are interested in a determination of these questions and should be made parties.

The judgment is reversed and the cause remanded, with directions to permit appellants to join as parties defendant, within such reasonable time as the trial court may allow, the contract holders under the second and third segregations, and for further proceedings in accordance with the views herein expressed. If appellants do not join such additional parties within said time, it is ordered that the action be dismissed. No costs are awarded on this appeal. The original opinion is modified to the extent herein indicated; in all other respects it stands.

Budge, C. J., and William A. Lee, Wm. E. Lee, JJ., and Givens, District Judge, concur.

Dunn, J., did not sit nor participate in the decision, on rehearing.

### ON PETITION FOR MODIFICATION.

#### (March 6, 1924.)

WM. E. LEE, J.—We adhere to the views expressed in the original opinion as modified by the opinion on rehearing, except in that portion of the opinion on rehearing which holds that contract holders on the second and third segregations are necessary parties to a complete determination of the issues presented in this cause and that such contract holders should be made parties. It is our understanding that appellant Vinyard expressly disclaims any right to

any storage water heretofore sold to contract holders, and no judgment the court could enter in the cause would affect the rights of such contract holders since they are not parties. We have held that appellant Vinyard is entitled to have applied to his contract any surplus storage water acquired by respondent company and its assignors in the Jackson Lake reservoir which is not necessary to fulfill outstanding contracts.

It seems to us, therefore, that the question for determination by the trial court is quantity, if any, of such surplus water in Jackson Lake reservoir over and above that required to fill contracts outstanding conceded by appellant Vinyard and water users of his class or found by the court to be prior to their rights.

The contract holders are not necessary parties to a determination of this question.

Budge, J., concurs.

GIVENS, District Judge.—I concur in the conclusion reached by Mr. Justice Wm. E. Lee. However, my concurrence to the effect that no order should be made requiring the contract holders on the second and third segregations to be brought into the action as parties defendant is upon the ground that in the present state of the pleadings and the record, the question of whether they are necessary parties is not before us.

McCarthy, C. J., and William A. Lee, J., dissent.

Dunn, J., deeming himself disqualified, did not sit at the hearing and took no part in the decision.