(May 8, 1924.)

## F. K. RICKER, Appellant, v. TWIN FALLS NORTH SIDE LAND & WATER COMPANY, a Corporation, Respondent.

[226 Pac. 167.]

WATERS AND WATERCOURSES — IRRIGATION—CANAL SYSTEM—CONTRACT FOR WATER — PERFORMANCE — EXTENT OF LIABILITY OF CONSTRUCTION COMPANY—MAKING WATER AVAILABLE—CONVEYING WATER TO LAND.

1. Under a contract for the construction of a gravity irrigation system water is made available, in compliance with a provision that the company would construct the canal system so that water conducted through the same might be available at a point not to exceed one-half mile, measured in a direct line, from each quarter-section of the land to be irrigated, when it has been conducted to a sufficiently high point, not to exceed one-half mile from the quarter-section embracing the lands to be supplied with water, and there placed at the disposal of the land owner, that it may be conducted to and upon the lands to be served.

2. Under a provision of a contract for the construction of a gravity irrigation system, making it incumbent upon the construction company to construct the canal system so that water may be available at a point not to exceed one-half mile, measured in a direct line, from each quarter-section of land to be irrigated, the construction company cannot be held for any portion of the expense of conducting the water from such point to the lands to be irrigated.

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. H. F. Ensign, Judge.

Action for damages for breach of contract to deliver water for irrigation. Judgment for defendant. *Affirmed.*

James & Ryan, for Appellant.

"The court in construing the terms of a contract and the law applicable thereto will take into consideration the conditions and circumstances under which the parties were con-

tracting, and construe their contract in the light thereof.'' (*Schurger v. Moorman*, 20 Ida. 98, 117 Pac. 122.)

The contract should be given a reasonable construction. The word ''available'' in the contract means obtainable in a practical sense.    (9 Cyc. 587.)

''Available'' means easy of access and usefulness for the purpose intended. Adaptable for the purpose for which intended; having sufficient force or efficacy and effectual for the object intended. (*Simpson v. United States*, 31 Court of Claims (U. S.), 217; *Pittsburgh Co. v. Broderick*, 56 Ind. App. 58, 102 N. E. 887.)

Water will not be deemed to be available unless placed at a point not to exceed one-half mile by ditch line from which the water will flow by gravity upon the land irrigated. (Rule 10 of the Idaho State Board of Land Commissioners; *Collins v. Twin Falls N. S. L. & W. Co.*, 28 Ida. 1, 152 Pac. 200.)

E. A. Walters and R. P. Parry, for Respondent.

The word ''available,'' as used in paragraph 11 of the state contract, means that the defendant company must place the water in a canal within the half-mile limit mentioned, at such a grade that the same will flow by gravity to and upon the lands to be irrigated.

The legal obligation of the defendant company did not extend further than putting the level of the water at a proper grade at or within the half-mile point.

After the water is taken into a service ditch from a main or subordinate lateral by irrigators, the construction company has no further control over it. (*Collins v. Twin Falls North Side Land & Water Co.*, 28 Ida. 1, 152 Pac. 200.)

WM. E. LEE, J.—In 1907, the state of Idaho, through its land board, entered into a contract with respondent providing for the construction of what is known as a Carey Act irrigation system on the north side of the Snake River, in what is now Lincoln and Gooding counties. One of the pro-

visions of that contract, which is the basis of this action, provided:

"The party of the second part (respondent) agrees to construct said canal system so that water conducted through the same may be available at a point not to exceed one-half mile, measured in a direct line, from each quarter section of land herein described and to be irrigated and reclaimed by water conducted through said canals."

The lands here concerned are described as the southwest quarter of section 29, township 7 south, range 15 east of the Boise meridian, the east half of which was owned by one Ward when this action was commenced, while the west half was owned by appellant Ricker. The trial court found that some of the lands are rough and rolling in character, and that flumes, dikes, siphons, pipe-lines and other irrigational devices than ordinary open surface irrigation ditches have been constructed and are commonly used by the settlers on the project. A portion of the lands of both Ricker and Ward is capable of irrigation, by ordinary surface ditches, from lateral W–26, which extends through the south forties of both Ricker and Ward. Due to the contour of the ground, however, it was not possible to irrigate approximately 50 acres of the quarter-section, some of which lies in each forty thereof, without the construction of a flume, dike, siphon or some other means of bringing the water to the high point on the 160 acres, across a depression from lateral W–33, which is less than one-half mile from the quarter-section. There is no question, however, that lateral W–33 is sufficiently high for water to flow by gravity therefrom to and upon the highest point on the 160 acres. In order to bring water from lateral W–33 to the highest point on the 160-acre tract, Ricker and Ward constructed an underground siphon and a dike from lateral W–33, through certain lands belonging to one Hastings which had been acquired by him as a desert entry, to and upon the highest point of the quarter-section. At its lowest place, the depression is about 15 feet lower than the level of W–33. There is no evidence that Ricker and the other original

purchasers knew, when they purchased their lands and water rights, where the different laterals would be located, and the trial court found that, because of the character of the lands on this project, the company made it a practice to take back the water rights appurtenant to lands that are high and rocky in character, and to refrain from collecting the purchase price thereof, where the extent of such lands constitutes an area of five acres or more.

It is appellant's theory, upon which he seeks to recover for himself and Ward the expense of the siphon, dike and right of way, that in order to comply with the provision of the state contract quoted above, it was the duty of respondent to construct its irrigation system so that appellant could convey water from the company's lateral in an open ditch, without the necessity of constructing any flume, siphon or. dike therefor. On the other hand, respondent contends that it complied with its contract when it so constructed its system as to bring the water to a point not to exceed one-half mile, measured in a direct line, from the said 160 acres, the point being sufficiently high to permit the water to flow by gravity to and upon the entire tract.

In the interest of those who were to settle upon the lands, the representatives of the state were naturally desirous of making the best terms possible, thereby securing the construction of the system at the least possible expense. The price of water rights depended largely on the number of canals and laterals to be constructed; and the number of canals and laterals to be constructed depended largely on how close to each tract of land the company would have to conduct the water for delivery to the settler. It was necessary to fix some definite point to apply to all the lands, and the state contract made it the duty of the company to construct its system so that the water would be available at a point not to exceed one-half mile from each quarter-section. It being a gravity system, it was necessary that the water, at the point of delivery or availability, should be enough higher than the land that it would flow upon the land. It was provided in the contract that the half-mile distance

from the point of delivery or availability to the land would be measured in a direct line, and not according to the course of any ditch, canal or other method of conveying the water. It would seem to be plain and clear from the language of the quoted provision of the contract that the construction company was only required to conduct the water to a point higher than the land to be irrigated, not to exceed one-half mile from the quarter-section, measured in a direct line, and deliver the water to the settler, by him to be conducted to and upon his land in any manner he saw fit. In order to sustain the contention of appellant, it would be necessary to read into the state contract something that was not put there by the parties; for, according to appellant, the above language makes it the duty of respondent to construct the system so that the water may be available at a point not to exceed one-half mile from each quarter-section, from whence it may be conducted to and upon the lands of each quarter-section by surface ditches and without the use of flumes, dikes or siphons. If appellant's contention is correct, what was the reason for measuring the distance from the point of diversion to the land in a direct line? Why was not such a provision expressly included in the state contract? That instrument is very comprehensive, and surely the reason for such an important provision as that contended for by appellant could not have been overlooked.

The parties to the state contract knew of the existence of the coulees, draws and depressions, and had it been intended that the company should be held responsible for getting the water across coulees, draws and depressions by means of siphons, dikes, etc., within the half-mile limit, and the evidence shows that many such devices are used on the project, doubtless the contract would not only have specifically so provided, but it would have indicated the exact means and methods of accomplishment. It is perfectly logical also to ask, if it was the company's duty under the state contract to pay for flumes, siphons, and dikes where it was not possible to convey the water by ordinary surface ditches, whose duty was it made by the state contract to maintain

such flumes, siphons and dikes; was it the company's or the settler's right to determine the location of the flume, siphon or dike, and whether siphons should be placed underground; and who was to determine the material for their construction, etc. ? The more one studies the object of the state contract and the provision in question, the more thoroughly one is bound to be convinced that the construction company discharged its duty when it conducted water, by its canals and laterals, to a point not to exceed one-half mile from each quarter-section, and there made it available for use by gravity, permitting the land owner to take the water and conduct it, as he saw fit, to the lands to be irrigated.

From a careful study of the state contract, its provisions and purposes, we are led to the conclusion reached by Mr. Chief Justice Sullivan in the case of *Collins v. Twin Falls etc. Co.*, 28 Ida. 1, 152 Pac. 200, in which the same provision of the same contract was under discussion. In that case, the following language was used:

"To make water available, under the provisions of said contract, simply meant to bring it to the half-mile point from a quarter-section of said land, measured in a direct line, in such a way that the water could be taken from the canal or lateral, to and upon the land to be irrigated, so that it may be used there for the purposes of irrigating the land through the ditches to be constructed by the settler, under a gravity system."

And if the foregoing quotation from the opinion in the Collins case is not thought determinative of the question here presented, the same opinion later contains the following, which would seem to be decisive:

"The legal obligation of the construction company, however, did not extend further than putting the level of the water at a proper grade at the half-mile point."

It is evident, from a consideration of the state contract and its objects and purposes, that it was the plan of its makers that the duty of the construction company was to conduct the water to the half-mile point and there put it at the disposal of the settler, and that the state contract

left it to the settler to conduct the water to his land in his own way and by whatever means might seem to him best calculated to serve his use and purpose.

Judgment affirmed. Costs to respondent.

McCarthy, C. J., and William A. Lee, J., concur.