(No. 5012. February 4, 1929.)

CHARLES VINYARD et al., Appellants, v. NORTH SIDE CANAL COMPANY, LIMITED, a Corporation, et al., Respondents.

[274 Pac. 1069.]

J. B. Eldridge, for Appellants.

A. B. Barclay and Walters, Parry & Thoman, for Respondents, 

GIVENS, J.—A history of this case and the issues are set forth in *Vinyard v. North Side Canal Co.*, 38 Ida. 73, 223 Pac. 1072, wherein the court reversed and remanded the case for the trial court to find whether there was any surplus storage water, holding that if there was, appellant and his class would be entitled to their *pro rata* share.

 The principal point in the appeal herein is that the trial court, instead of making specific findings on the question of surplus, set forth a conclusion that there was no surplus. A specific finding should have been made but since it was not, if the facts show that no finding conflicting with the conclusion reached could have been made, the action will not be reversed. (*Tage v. Alberts*, 2 Ida. 271, 13 Pac. 19; *Wood v. Broderson*, 12 Ida. 190, 85 Pac. 490; *Berlin Machine Works v. Dehlbom Lumber Co.*, 29 Ida 494, 160 Pac. 746; *Storey & Fawcett v. Nampa & Meridian Irrigation District*, 32 Ida. 713, 187 Pac. 946; *Basinger v. Taylor*, 36 Ida. 591, 211 Pac. 1085; *Pleasants v. Henry*, 36 Ida. 728, 213 Pac. 565; *Erickson v. Winegar*, 41 Ida. 1, 236 Pac. 870.)

The original contracts of the settlers of the second and third segregations with the Carey Act construction company gave them respectively 1/80th and 1/100th of a cubic foot per second to be supplied under the terms of the contract between the state and the construction company in part from the natural flow of Snake River and in part from storage in the Jerome and Wilson reservoirs, measured within one-half mile of their respective lands. (*Collins v. Twin Falls Co.*, 28 Ida. 1, 152 Pac. 200; *Ricker v. Twin Falls Co.*, 39 Ida. 93, 226 Pac. 167.)

When it was found and determined from the attempted actual operation thereof that the Jerome and Wilson reservoirs would not hold water, a supplemental contract was made March 27, 1913, between the state and the construction company providing that the company should acquire storage rights in the Jackson Lake reservoir to take the place of the storage in the Jerome and Wilson reservoirs until such time, if any, within certain time limits, that they could be made serviceable.

The part of this supplemental contract of March 27, between the state and the company, which is material is as follows:

"That the company shall procure to be stored at the Jackson Lake Reservoir in the State of Wyoming or elsewhere, at the option of the second party, an amount of water in excess of 170,000 acre feet in accordance with the resolutions of the Land Board adopted December 27, 1912, it being understood that the said party of the second part may procure such storage to be provided by the government of the United States, or by some other person or corporation, it being understood that if water is procured from Jackson Lake or some other Government Reservoir, that it will be subject to terms and conditions of the Act of Congress commonly known as the Warren Act [43 U. S. C. A., secs. 523–525], and other laws relating thereto.

"2. That water stored at Jackson Lake Reservoir, or such other reservoir as may be provided under the terms hereof, may be used on the lands under the irrigation canals of the Twin Falls North Side Land and Water Company in Lincoln and Elmore counties, State of Idaho, in lieu of water stored in Wilson Lake or Jerome Reservoirs, and the said party of the second part is authorized and empowered to procure such storage elsewhere than at the last named reservoirs.

"3. That waters stored at Jackson Lake or elsewhere shall be delivered proportionately until final dedication authorized in paragraph seven hereof at the intake of Wilson Lake and Jerome reservoirs, the amount so furnished at such points, together with the amounts that may be

stored in said Jerome and Wilson Lake reservoirs, shall equal the amount for each acre sold under the reservoir system which said reservoirs were originally designed to hold for each acre originally under said system, State lands and private lands within the general limits of any segregation to be included herein and to be considered as a part of the project as of the date of the segregation within the general limits of which they are included. It is the intent hereof not to change the existing contractual relations of the parties so far as the water supply to which the settlers are entitled is concerned, it being the purpose only to provide for the storage of water elsewhere so far as the same may be necessary and to provide the proper proportionate amount of water in accordance with the terms of the contracts by the parties of the second part with the State and with the settlers for each acre of land to be delivered at Wilson Lake and Jerome Reservoirs in proportion to the capacity of said reservoirs as originally planned; that is to say, as if fifteen-seventeenths of said water was stored at Jerome and two-seventeenths at Wilson Lake reservoirs.

\* \* \* \* \* \* \* \* \* \* \* \*

"8. It is anticipated that the said party of the second part will procure more water to be impounded at Jackson Lake than is called for by the terms of this agreement and any additional water so impounded may be used for the irrigation of other lands, or for other purposes."

Appellants contend that by this contract only 170,000 acre-feet measured at the intake of the Jerome and Wilson reservoirs were given to the settlers on the second and third segregations. Respondents take the position that sufficient storage within the total amount secured, namely, 312,007 acre-feet (that is, above elevation 6752 in the Jackson Lake reservoir, the only amount in controversy) sufficient to fill the settlers' rights of 1/80th and 1/100th acre-feet was intended to be so supplied. Respondents further contend that appellants and their class are entitled, and the court so found, to none of the surplus, if any, from this storage. The previous opinion decided otherwise (*Vinyard v. North Side Canal Co., supra*) and such is therefore the

law of this case (*Hall v. Blackman,* 9 Ida. 555, 75 Pac. 608; *Steve v. Bonners Ferry Lumber Co.,* 13 Ida. 384, 92 Pac. 363; *Gerber v. Nampa etc. District,* 19 Ida. 765, 116 Pac. 104; *Nampa v. Nampa etc. District,* 23 Ida. 422, 131 Pac. 8; *Williams v. Sherman,* 36 Ida. 494, 212 Pac. 971), and the portion of the findings, conclusions and judgment entered thereon by the trial court is erroneous.

The decisive question is what amount of this storage now belongs exclusively and primarily to the second and third segregations. If only 170,000 acre-feet measured at the Jerome and Wilson reservoirs, there is in the average year a surplus of some 10,820 acre-feet; if, however, they are entitled to their full water right of 1/80th and 1/100th acre-feet measured within one-half mile of their lands, there is in an average year a deficit of from 155,030 acre-feet to 77,098 acre-feet dependent upon the different calculations of the engineers. In contemplation of there having been sold and now entitled to water under the second and third segregations 138,000 acres, under the latter construction there is no surplus, such conclusion being based, as we understand the record, on undisputed evidence, except for the above difference.

Under the original contracts of the settlers and the construction company and the contracts between the state and the company, the first segregation had no rights in the storage in Jerome and Wilson reservoirs. The March, 1913, contract certainly provided, first for the second and third segregations and this court has held in the previous opinion that any balance would go to the first. The final opinion in the former decision did not limit the second and third segregations to 170,000 acre-feet. The contract rights of the second and third segregations were thus not passed upon in the previous opinion.

The findings of fact of the land board appearing appended to the 1913 contract could not change the rights of the settlers. (*Furbee v. Alexander,* 31 Ida. 738, 176 Pac. 97; *Sanderson v. Salmon River Co.,* 34 Ida. 145, 160, 199 Pac. 999, 1003.)

The 10,000 acre-feet of storage under elevation 6,572 in Jackson Lake are, by the previous decision herein, not in dispute. (*Vinyard v. North Side Canal Co., supra.*)

The only consideration to be given the contract, dated February 25, 1913, between the United States and the Kuhn Irrigation and Canal Company, owner of the North Side Canal Company, before it was turned over to the settlers, providing for the 10,000 acre-feet, is to arrive at a proper construction of the contract between the company and the land board, providing for the storage in Jackson Lake substituted for storage in Jerome and Wilson reservoirs, dated March 27, 1913. This comparison shows that the February, 1913, contract was generally for the benefit of all the North Side tract while the contract of March 27th dealt in part specifically with the storage in the Jerome and Wilson reservoirs, and there is no contention that before the March, 1913, contract, the settlers on the first segregation had any rights whatever in such storage any more than there is any contention that the settlers on the second and third segregations had any rights in the natural flow right of 400 second-feet appropriated to the settlers on the first segregation. Storage other than that to be substituted for the Jerome and Wilson reservoirs is mentioned in the February contract, but the line of demarcation between the different kinds of storage is clear.

It seems to us apparent that the 1913 contract intended not to limit the water to be made available in the Jackson Lake reservoir for the second and third segregations to 170,000 acre-feet, but to provide sufficient to give them a full water right under their original contracts (*Tapper v. Idaho Irrigation Co.,* 36 Ida. 78, 210 Pac. 591), and *in limine* we may say we doubt if any other contract could have been made by the only parties to that contract, viz., the state and the Carey Act company (*Boley v. Twin Falls Canal Co.,* 37 Ida. 318, 331, 332, 217 Pac. 258); passing that, however, the contract evidently was intended merely to substitute one storage for another, and contemplated not merely a difference in amount because of the losses in transit between Jackson Lake and the Jerome and

Wilson reservoirs but that enough should be impounded and delivered to give the second and third segregations their full rights. In an average year there is available at Jackson Lake for the second and third segregations 236,364 acre-feet. We believe that the evidence without dispute shows that in an average year there is available of this amount at their headgates, less losses in transit, 125,126 acre-feet and there is required at these points to fill their rights not less than 283,156 acre-feet.

Appellants for their figures take as their starting point that the settlers on the second and third segregations are entitled only to 170,000 acre-feet all told, measured at the Jerome and Wilson Lake reservoirs; hence they arrive at a different result. Their premise is incorrect.

Appellants urge that respondents are attempting or contemplating selling some of this storage, and that indicates on respondents' part a recognition of a surplus and that they should be restrained from so selling. The court made no finding on this nor were any findings proposed. Hence it is unnecessary, if such point be within the issues of the pleadings, to pass further thereon except to call attention to pages 82, 83 and 86 in the former opinion. (*Vinyard v. North Side Canal Co., supra.*)

In sending the case back for further hearing (*Vinyard v. North Side Canal Co., supra*), nothing was contemplated or authorized with respect to any hearing or investigation as to the first segregation settlers having procured other water rights (paragraph three, eighth separate defense in the supplemental answer of the amended complaint as amended), so issues and evidence thereon have no proper place in this action and should be stricken.

Deciding that the settlers on the second and third segregations are entitled to all they could ask for under the most favorable construction which could be given their individual contracts, obviates the necessity of deciding whether their rights could be determined to be different without their presence as parties in this litigation.

The conclusions herein, showing that the findings made by the trial court in the second hearing that there was no

surplus are correct, though a specific finding should have been made, render the omission harmless error.

Modified as prescribed below, the judgment is affirmed. Findings numbered 10, 11, 12 and 50 of the findings on the first trial incorporated into the findings on the second trial, and findings numbered 2 and 6 of the findings on the second trial, and paragraphs 2, 3 and 4 of the conclusions as entered on the second trial shall be modified to recognize and allow the users on the first segregation, upon proper payments, to receive and share in any storage in the Jackson Lake reservoir besides the 10,000 feet below elevation 6,752, after the rights of the users on the second and third segregations have been supplied. Paragraphs 3 and 4 of the judgment shall be likewise modified, such modification to make said findings, conclusions and judgment conform to the former opinion in this action. (*Vinyard v. North Side Canal Co., supra.*)

Paragraph 58 of the first findings so incorporated in the second findings shall be modified to provide for the measurement of the storage water for the users on the second and third segregations at points one-half mile from their respective holdings.

Paragraph X of the findings on the second trial shall be stricken.

No costs allowed on this appeal.

Budge, C. J., Wm. E. Lee, J., and Hartson, D. J., concur.

Taylor, J., concurs in the result.

Petition for rehearing denied.