## McCLUNG v. TWIN FALLS NORTH SIDE LAND & WATER CO. et al.

Circuit Court of Appeals, Ninth Circuit.
June 17, 1929.

No. 5740.

J. B. Eldridge, of Boise, Idaho, for appellant.

Walters, Parry & Thoman, E. A. Walters, R. P. Parry, and J. P. Thoman, all of Twin Falls, Idaho, for appellees.

Before RUDKIN and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

WILBUR, Circuit Judge. This is an appeal from an order dated October 3, 1928, refusing the appellant leave to file a second proposed supplemental bill in equity after decree. The decree in this action was entered December 20, 1917, in pursuance of a stipulation between the parties.

The original action relates to the rights of settlers holding contracts for water to be delivered under a proposed irrigation system to be constructed by the Twin Falls North Side Land & Water Company and to be operated by the North Side Canal Company, Limited, in which all owners of water rights, including appellant, were stockholders. This irrigation system was to be constructed under the act of Congress known as the Carey Act (43 USCA § 641) and under the laws of the state of Idaho. The controversy presented to the court by the original bill was one in relation to the completion of the contract for the construction of the said irrigation system by the Twin Falls North Side Land & Water Company and to the limitation of sales by it of water right certificates and shares of stock in the North Side Canal Company, Limited. Each share of stock as provided in the water certificate or contract with the Twin Falls North Side Land & Water Company entitled the owner to receive $\frac{1}{80}$ of a cubic foot of water per acre per second of time.

The decree provided that the Twin Falls North Side Land & Water Company could sell and keep sold 170,000 shares in the capital stock of the North Side Canal Company, Limited. It was further provided that: "If at any time in the future Twin Falls North Side Land & Water Company should conclude that the irrigation system and water supply therefor, will serve or can be made to serve, without violating the settlers contracts, more than 170,000 acres of land, and if the Twin Falls North Side Land & Water Company is then unable to agree with the North Side Canal Company, Limited, as to what excess, if any, may be so served, then and in that event, and so often as such may be the case, the Twin Falls North Side Land & Water Company may bring an action in any court of competent jurisdiction to have said question judicially determined; and the question as to where the water may be measured to the contract holder under his contract with the Twin Falls North Side Land & Water Company and the question as to how much water must be so measured thereunder for the purpose of determining what acreage may be irrigated above said 170,000 acres, are not covered or affected by this decree."

The decree also directed that the Twin Falls North Side Land & Water Company should complete the irrigation system. Taken as a whole, the purpose and effect of the decree was to authorize and direct the completion of the contracts for the construction of the irrigation system and to limit the shares of stock to be sold by said company under the plan as then provided to 170,000 shares until the Twin Falls North Side Land & Water Company concluded that the system would serve more than 170,000 acres of land without violating the settlers' contracts and could secure from the canal company an agreement as to what additional land could be so served, or in the event of the failure to effect such an agreement the Twin Falls North Side Land & Water Company was authorized to bring an action in a court of competent jurisdiction to have determined the question as to what additional acreage could be served without violating the settlers' contracts. The supplemental bill presented by the appellant alleges that the Twin Falls North Side Land & Water Company and the North Side Canal Company, Limited, have agreed that water rights for 15,000 additional acres of land can be sold without violating the settlers' contracts.

Under the terms of the decree, upon the consummation of this agreement the sale of the additional shares of stock representing the additional acreage was expressly authorized. To meet this situation the appellant in his supplemental bill alleges that the acceptance of the work as completed by the proper authorities of the state of Idaho was fraudulent, and that the agreement between the North Side Canal Company, Limited, and the Twin Falls North Side Land & Water Company were the result of a "wrongful, unlawful and fraudulent combination and conspiracy, that the commissioner of reclamation of the state of Idaho wrongfully and fraudulently determined that the irrigation system had been completed and pretended to accept the same." It is also alleged that all the acts and doings were false and fraudulent and known to be such by the North Side Canal Company, Limited, and by the commissioner. These allegations of fraud must be disregarded. 31 Cyc. 685; Marquez v. Frisbie, 101 U. S. 473, 479, 25 L. Ed. 800; United States v. Atherton, 102 U. S. 372, 26 L. Ed. 213; Green v. Hayes, 70 Cal. 276, 11 P. 716. No facts or circumstances to support the general allegation of fraud are alleged in the bill, other than the inference to be derived from the allegation with reference to the inadequacy of the amount of water available in the system. It is alleged in the supplemental bill that in the agreement between the two above-mentioned corporations entered into in 1920 for the sale of an additional 15,000 shares of stock, it is stated that the work of canal enlargement and improvement had been completed and that an increased right in the Milner Diversion Dam had been secured by means of which 500 second feet of additional water could now be diverted in the said canal system. The proposed supplemental bill does not deny the truth of the statement that an additional 500 second feet of water had been secured for the system, which at the rate of $\frac{1}{80}$ second foot per acre would take care of 40,000 acres. Added to the 170,000 acres provided in the original decree would give 210,000 acres instead of the 185,000 acres agreed to be sold.

The appellant's charge in the supplemental bill as to water shortage is contained in the following allegation in paragraph X: "That the present capacity of the irrigation system furnished by the Land and Water Company for said North Side Canal Company is not sufficient to permit of the delivery of the amounts already contracted to be delivered to settlers by said Land and Water Company; that the dependable operating capacity of the system is not more than 3360 second feet and there is a water loss of 40 per cent *of* making deliveries through said system; and that 3360 second feet of water if available in the system will only furnish and deliver the contract amounts of water to 163,080 acres under said state and settlers' contracts now outstanding."

3,360 second feet would furnish water for 268,800 acres of land at the rate of $\frac{1}{80}$ of a second foot per acre. The 163,080 acres referred to in the complaint is evidently derived by deducting from the total flow of 3,360 second feet the alleged water loss of 40 per cent. due to loss in making deliveries through the system. Deducting such alleged loss would leave 2,016 feet which would irrigate 161,280 acres at the rate of $\frac{1}{80}$ of a cubic foot per acre, or to irrigate 163,080 acres some acreage at $\frac{1}{80}$ of a second foot and some at $\frac{1}{100}$ second foot would irrigate 144,080 at $\frac{1}{80}$ and 19,000 at $\frac{1}{100}$. In this connection it will be observed that the supplemental bill assumes that the flow of $\frac{1}{80}$ or $\frac{1}{100}$ of a second foot is to be measured at the land to be irrigated and therefore without loss. The decree on the original bill in this action, however, as shown by the above quotation therefrom, expressly refrains from a determination of that question, which was apparently then being litigated in the courts

of the state. See State v. Twin Falls Canal Co., 21 Idaho, 411, 121 P. 1039, L. R. A. 1916F, 236; Collins v. Twin Falls, 28 Idaho, 1, 152 P. 200; Ricker v. Twin Falls, etc., Co., 39 Idaho, 93, 226 P. 167; Vinyard v. North Side Canal Co., 38 Idaho, 73, 223 P. 1073; Id. (Idaho) 274 P. 1069.

The gist of the decree then was not that each stockholder should have 1/80 or 1/100 of a cubic foot per second delivered at his land, but that he was to have a proportion of the water available under the system, more or less dependent upon whether his contract was for 1/80 or 1/100 second feet per acre, for each acre, and that no more than 170,000 shares should be sold until an agreement could be reached between the canal company representing the appellant and its other stockholders and the construction company that additional acreage could be served from the system. The court not only expressly refrained from fixing the terms or conditions under which such additional stock could be issued, other than that it was to be agreed upon, but also expressly reserved from the decision the question as to the amount of water to be available to justify such additional sale by excepting from the decision the question as to the amount of water to be received by the contract holders under their contracts or under the proposed system or the place of its measurement "for the purpose of determining what acreage may be irrigated above the 170,000 acres." It would appear that the main contention of the appellant as set forth in his supplemental bill relates to the place of measurement of his right, and of the entire supply. There was no abuse of discretion on the part of the trial court in refusing to permit the filing of appellant's supplemental bill. The long lapse of time from the entry of the decree, the fact that appellant attacks a certificate of completion issuing by the state authorities on August 6, 1920, and a contract of July 27, 1921, in pursuance thereof made by the corporation in which the appellant is a stockholder and on his behalf, that his right to prosecute this action at all is based on his ownership of said stock, would perhaps be alone sufficient to justify refusal to consider the supplemental bill tendered in September, 1928, but as appears from the proposed supplemental bill the rights the plaintiff here seeks to enforce are in no sense ancillary to the original decree. This cannot be done by supplemental bill. He seeks to have questions adjudicated which are expressly excepted from the decree in accordance with the stipulation of the parties; he seeks to overturn an agreement authorized by the decree on the ground that the agreement was entered into fraudulently. Whether or not the agreement was fraudulent, it was still the very method selected by the court in pursuance of the stipulation of the parties for determination of the question now sought to be litigated by supplemental bill. The right of the appellant is therefore not based upon the decree itself, but upon his rights as a certificate holder in the North Side Canal Company, Limited.

In exercising its discretionary power in connection with the filing of the proposed supplemental bill, the court also had the right to take into consideration the fact that appellant had instituted an action in the state court in which he attacks this same proposed issue of 15,000 shares of stock upon substantially the same grounds alleged in the proposed supplemental bill.

Appellant contends that the refusal of the trial court to allow the filing of the supplemental bill was an adjudication of the merits of the case which "may be set up as a bar to any future action if the judgment of the trial court stands." To quote further from his brief: "For the reason that the trial court judicially determined upon the showing made, and all the showing was made that can ever be made, that the parties found they could sell additional water rights without violating the settlers' contracts and that in so finding they have not run counter to the original federal decree; and thus the trial court adjudicated and determined that the parties had followed the course set out in the federal decree for arriving at that matter, and that we are in no position to complain of it. This being true, it does seem to us that that is a final determination of the matter and we fear may be set up as a bar to any future suit involving that point."

In this the appellant is in error, as we have already pointed out, the trial court in entering the original stipulated decree expressly refrained from adjudicating the rights of the several stockholders or from fixing the terms and conditions under which additional stock could be issued. It did protect the stockholders against additional issuances of stock until such time as they, speaking through the corporation authorized to represent their interests, should agree that additional stock could be sold without violating the settlers' rights, or until appropriate court action, if such agreement was not reached. The point determined by the trial court, with which we entirely agree, is that the proposed supplemental bill of the appel-

lant is not germane to the decree theretofore entered, and that if such questions are to be litigated they could not be litigated in this action by supplemental bill which should present facts purely ancillary to this action.

The order is affirmed.