(No. 5401. July 25, 1930.)

BLAINE COUNTY CANAL COMPANY, a Corporation, Respondent, v. JOHN M. HANSEN, Appellant.

[292 Pac. 240.]

G. F. Hansbrough and J. H. Andersen, for Appellant.

Wm. Story, Jr., and Peterson, Baum & Clark, for Respondent.

GIVENS, C. J.—Respondent, a Carey Act operating company, sued appellant in *quantum meruit* for the maintenance charge for the delivery of water for the irrigation season of 1927 on the basis of ninety-five cents an acre. The appellant contested the action on two grounds, first, that respondent had no right to bring the action because, under the original contract between appellant and the construction company, maintenance charges were limited to fifty cents an acre, and the construction company had never turned the project over to the operating company; and secondly, that if it had, the remedy for the collection of maintenance charges provided by C. S., secs. 3039–3049 (chap. 138) as amended 1925 Sess. Laws, chap. 107, p. 153, is exclusive. This is somewhat of a companion case to *Hansen v. Woods, post*, p. 656, 290 Pac. 379.

A brief history of the situation of the parties and a statement of their contractual and legal rights are necessary to a proper understanding of the controversy. In 1910 the Blaine County Irrigation Company, organized as a Carey Act construction company, entered into a contract with the state of Idaho for the construction of a Carey Act project on what is known as Little Lost River, designated as List No. 53, State of Idaho. Thereafter in 1917 this company being in financial difficulties transferred its interest in the project to the Blaine County Investment Company, a Carey Act construction company, which thereafter prosecuted the work on the project begun by the irrigation company. Pursuant to law and the original contract between the settlers and the construction company, respondent was organized in 1910 as the operating company, the stockholders to be the contract purchasers, such company to eventually control the operation

of the project when turned over. In the meantime control of the operating company, respondent herein, was retained by the construction company under paragraph 10 of the original contract.

The transfer from the irrigation company to the investment company did not change the contract between the settlers and the irrigation company and need not be further considered herein. The amended complaint herein merely alleged that respondent, a nonprofit corporation, had delivered water at the necessary and reasonable cost to appellant of $152 for the year 1927, being ninety-five cents an acre for 160 acres, and that appellant had not paid the same. There was no allegation that the canal company was the operating company to which had been turned over the control of the project by the construction company.

The appellant in his answer denied the allegations of the amended complaint and in addition set up as a special defense that the respondent company was the operating company for the two preceding construction companies. The affirmative answer did not allege that control had not passed, but further, by way of special defense, urged that the method provided for the collection of maintenance assessments was exclusively controlled by C. S., chap. 138. The appellant in his objection to the proposed findings urged that the Carey Act project had never been turned over to the Blaine County Canal Company as provided by law. The testimony on the part of respondent touching this phase of the controversy was merely to the effect that the respondent company had for a number of years operated the project. The respondent further at the conclusion of its case made an offer of evidence of similar import and that the Blaine County Investment Company was and had been defunct and wholly without financial resources.

An objection to the offer was sustained on the ground that it was not the best evidence. The offer was renewed at the conclusion of appellant's case and again an objection that the evidence was irrelevant, incompetent and immaterial was sustained. Respondent, however, introduced what appears to

be an order of the department of reclamation which department is by C. S., sec. 350, the successor of the land commissioners so far as their duties relate to the administration of the Carey Act. This instrument recited that the project had been turned over to the Blaine County Canal Company for operation and maintenance.

Appellant in his brief assigns as error the findings of the trial court "that the plaintiff (respondent) was formed to take over and operate the irrigation system for the use and benefit of its stockholders and to distribute to them such water as may be available for their use under the water rights appurtenant to said project and as well for the purpose of levying and collecting tolls, charges and assessments for the operation, maintenance and management of said system." And this portion of said paragraph: "The powers of the plaintiff in this respect are not limited by any of the terms or provisions of said contract between the said Blaine County Irrigation Company Ltd., and the State of Idaho under which the said irrigation system was constructed."

It would seem, however, that the decisive point is not whether the system has been turned over but whether the Blaine County Canal Company, the respondent herein, the operating company, is under the control of the construction company or of the settlers. It is not clear from the record or the briefs whether appellant thus contends or merely contends that the project has not been finally completed so that it can be finally turned over by the construction company to the operating company.

In *Vinyard v. North Side Canal Co.*, 38 Ida. 73, 223 Pac. 1072, this court held that the provisions of the contract between the settler and the construction company relative to maintenance charges are not binding on the operating company when the operating company takes over the maintenance and operation of the system and is in possession and control of the same. In that case, there was a specific finding on this point, and herein there is not; nor did appellant, at the time he filed objections to the findings made, present a finding on this point or object to the findings as signed be-

cause they did not specifically cover this precise question. In *Vinyard v. North Side Canal Co., supra,* the court, further commenting upon a provision in the contract therein in question similar to the contract herein, limiting the maintenance charge which may be levied by the construction company, said (page 85):

"By its (the contract's) very terms, it is confined to the period when the construction company was in control. The defendant operating company can charge as maintenance its share of the cost of maintaining and operating the reservoir and the cost of maintaining and operating that part of the system by which the storage water is delivered."

It would appear, though none too clearly from the certificate, if we may call it that, by the commissioner of reclamation introduced in evidence by the respondent, that the so-called Dry Creek portion of this project was not turned over but that the balance was. While we do not hold that the operation and maintenance of the project together with the management and control thereof had passed entirely to the settlers, in view of the entire record it would appear that appellant was not contesting respondent's right to bring this action because control had not passed from the construction company to the operating company, but that the project had not been so completed that it had been or could be finally turned over to the operating company, respondent herein. Upon the assumption, therefore, that the record justifies the conclusion that control had, except as to the reservoir, in effect passed to the operating company from the construction company, the fifty cents provision of the contract of the construction company would not be binding upon the respondent.

The further question then to be determined is whether C. S., chap. 138, provides the exclusive method for recovery of maintenance charges. The last paragraphs of C. S., sec. 3039, and C. S., sec. 3049, expressly make the method of assessments provided for in chap. 138 not exclusive. C. S., sec. 3039, was repealed by 1925 Sess. Laws, chap. 107, p. 153, and sec. 3040 amended, and the amended

section contains as a proviso, the proviso formerly contained in sec. 3039.

The authorities cited by appellant, therefore, to the effect that statutes providing a specific and special remedy will generally be considered as exclusive are not in point because these sections of the statutes expressly authorize other methods. This court has held in *Adams v. Twin Falls etc. Co.*, 29 Ida. 357, 161 Pac. 322, that chap. 138 is not exclusive but that the party who furnishes water may proceed either under that chapter or under C. S., sec. 5631.

The trial court found upon sufficient evidence that the water was delivered by respondent to appellant at his instance and request and that the charge was the reasonable value of such service.

■ Where a new remedy is provided for a pre-existing right, the remedy is generally held to be cumulative. (*State v. Railroad*, 62 N. H. 29; *Hickman v. Kansas*, 120 Mo. 110, 41 Am. St. 684, 25 S. W. 225, 23 L. R. A. 658; *Billmyer Lumber Co. v. Merchants Coal Co.*, 66 W. Va. 696, 66 S. E. 1073, 26 L. R. A., N. S., 1101; 1 C. J. 988.)

■ In all cases the intention of the legislature must control. We believe that its intention that chap. 138 is cumulative and not exclusive is disclosed in this provision. (C. S., sec. 3039, as amended 1925 Sess. Laws, chap. 107, p. 153, referred to above.)

" . . . . provided that any right to levy and collect tolls, assessments and charges by any person, company of persons, association or corporation, or the right to a lien for the same which does or may hereafter otherwise exist, is not impaired by this article."

The judgment is affirmed. Costs awarded to respondent.

Budge, Lee, Varian and McNaughton, JJ., concur.