## NORTH SIDE CANAL CO., Limited, v. IDAHO FARMS CO.

### No. 9049.

Circuit Court of Appeals, Ninth Circuit.

Nov. 22, 1939.

Rehearing Denied Feb. 2, 1940.

Wayne A. Barclay, of Jerome, Idaho, Frank L. Stephan and J. H. Blandford, both of Twin Falls, Idaho, and Richards & Haga, of Boise, Idaho, for appellant.

Edwin Snow, of Boise, Idaho, and A. F. James, of Gooding, Idaho, for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee, a Delaware corporation, sued in the federal court for Idaho to quiet its title to about 11,000 acres of land in what is known as the "North Side Project" in that state. This is a Carey Act project initiated under the act of August 18, 1894, 28 Stat. 372, 422, as amended June 11, 1896, 29 Stat. 413, 434, 43 U.S.C.A. § 641 et seq., providing for the donation to the states of desert lands, conditioned upon the states' causing the lands to be reclaimed, occupied and cultivated by actual settlers.[1]

Appellee is the successor of Twin Falls North Side Land & Water Company, a corporation organized in 1907 for the purpose of constructing the irrigation system and selling water rights in it.[2] Appellant, an Idaho corporation, is the operating company. It was organized pursuant to a contract between appellee's predecessor and the State of Idaho for the purpose of taking over the system and operating it on behalf of the settlers. The lands in suit, with the appurtenant water rights and water stock, were acquired by appellee prior to 1928, in part by the process of foreclosure and in part by deed in lieu of foreclosure. The acquisition resulted from the failure of individual entrymen to pay in full to the construction company the purchase price of their water rights.[3]

---

[1] Originally, the North Side Project embraced about 200,000 acres. The area was later reduced to about 170,000 acres.

[2] The stock in the construction company was taken over by the owners of defaulted bonds issued by the company, and as the result of proceedings which need not be detailed the corporate name of the latter was changed to Idaho Farms Company.

[3] The contract between the state and the construction company, appellee's predecessor, provided that initially the entire capital stock of the operating company (appellant) was to be issued to and

belong to the construction company, as consideration for the building of the system. This arrangement enabled the construction company to sell and deliver to purchasers of water rights the shares of stock in the operating company representing such rights. These shares of stock, in the hands of the construction company, had no voting power and were of no force and effect until sold or contracted to be sold to purchasers of land under the irrigation system. Upon the purchase of a water right by the settler there was issued to the purchaser one share of stock in the operating company

After appellee acquired the properties appellant operating company levied assessments thereon for the maintenance and operation of the canal system. Appellee has declined to pay these assessments, claiming the right to hold the land and water rights exempt from assessment until resale to other settlers. Its claim is grounded in the theory that the previously attempted sales "have failed and come to naught; the land is not farmed or irrigated; it is awaiting resale to other settlers." Appellee argues that the primary question at issue is the relative priority of the claim of the construction company to reimbursement for the cost of constructing the irrigation works, as opposed to the subsequent claim of the canal company for the cost and expense of operating and maintaining the system. Appellant, on the other hand, asserts that its assessments are prior liens, and denies that appellee has a lien on the land acquired. The court below (D.C., 24 F. Supp. 189), believing that the question had been disposed of adversely to the position of the operating company in Portneuf-Marsh Valley Canal Co. v. Brown, 274 U.S. 630, 47 S.Ct. 692, 71 L.Ed. 1243, entered a decree in harmony with appellee's contention.

By legislation enacted in 1895 (§ 41-1701 et seq., Idaho Code Anno.) the State of Idaho accepted the benefits of the Carey Act and undertook to provide the machinery for the reclamation of desert lands segregated to it under the act. § 41-1726 provides that "any person, company or association, furnishing water for any tract of land, shall have a first and prior lien on said water right and land upon which said water is used, for all deferred payments for said water right; said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner and possessor of said land; said lien to remain in full force and effect until the last deferred payment for the water right is fully paid and satisfied according to the terms of the contract under which said water right was acquired." By § 41-1901 of the state code assessments of nonprofit corporations organized to operate an irrigation project or canal system, or for the purpose of furnishing water to their shareholders, are given "a first and prior lien, except as to the lien of taxes, upon the land to which such water and water rights are appurtenant."

At the time this suit was begun a number of suits, involving the identical ques-

---

for each acre of land entered by the settler.

The contracts between the entrymen and the construction company for the purchase of water stock in the operating company contained a provision to the effect that "upon default in the payment of. the payments above specified, or of the interest thereon, or any annual charge, toll or assessment, for the operation and maintenance of the irrigation system hereinbefore provided for, or upon his default in performing any of the conditions hereof, the Company may declare the entire amount of the unpaid purchase price for said water rights due, and may proceed either in law or equity to collect the same, with interest, and to enforce any lien which it may have upon the water rights hereby contracted, or upon the lands to which said water rights are dedicated or may at its option proceed to enforce any remedy given by the laws of Idaho to the Company against the purchaser. And the purchaser hereby further covenants that he will and by these presents does hereby grant, assign, transfer and set over by way of mortgage or pledge to the Company to secure the payments of the amounts due and to become due on the purchase price

of the water rights hereby contracted to be sold and to secure the full performance of all of his covenants and agreements herein contained, any and all interest, and all rights which he now has or which may hereafter accrue to him under his contract with the State of Idaho for the purchase of the lands to which the water rights hereby contracted for are dedicated, together with any and all interest in the said water rights."

Section 5 of Article 10 of the by-laws of the operating company provides that: "All the stock of this Corporation shall be issued to and held by the Twin Falls North Side Land and Water Company, its successors or assigns, in order to enable it to deliver shares of stock to purchasers of water rights, but said shares of stock shall have no voting power and shall not have force and effect and shall not be assessable for any purpose either for maintenance or otherwise, until they have been sold or contracted to be sold to entrymen or owners of land under the irrigation system, and all assessments, maintenance and other charges must be paid by the purchaser or owner of the stock and not by the Twin Falls North Side Land and Water Company, its successors or assigns."

tions presented here, were pending between the parties in the Idaho state courts. Shortly after the argument in this court, one of these cases, North Side Canal Co., Ltd. v. Idaho Farms Co., Idaho, 96 P.2d 232, was decided by the Supreme Court of the state. The court held that the Idaho Farms Company, as successor of the construction company, having acquired the land and water rights at foreclosure sale, or by voluntary deed in lieu thereof, thereby becoming owner, had ceased to have a lien upon the property. It was pointed out that through deed or foreclosure the appellee "acquired something it never had before, and which it did not create or convey in the first place, namely, the land." [4] North Side Canal Co., Ltd. v. Idaho Farms Co., supra, 96 P.2d 232, 237.

The crux of the state court decision is that by purchase on foreclosure of its lien, or by deed in lieu thereof, payment to the construction company for the water rights sold by it is completely effected. The debt growing out of the sale of the water right was held to be in rem only, since no deficiency may be docketed against the entryman. It was thought that the statute providing for the lien does not permit of repeated recapturings and resales, and that the lien does not extend beyond foreclosure. The theory that appellee holds the acquired land and water in a trust capacity, for resale only, and that it is entitled upon resale to no more than the amount remaining unpaid for the water right, was rejected; and it was held that no restrictions are placed by the state statute, § 41-1735, I.C.A., on the rights of the construction company after the redemption period expires and sheriff's deed issues. It may then, the court said, do what it pleases with the property and may sell it for whatever it will bring. [5]

■ The Supreme Court in Portneuf-

Marsh Valley Canal Co. v. Brown, 1927, 274 U.S. 630, 47 S.Ct. 692, 71 L.Ed. 1243 —a suit involving a cognate controversy between an operating company and certain individuals standing in the shoes of a Carey Act construction company—reached a conclusion which may be thought difficult to reconcile with that of the Idaho court. The latter sought in its opinion to distinguish the Portneuf-Marsh case, but whether or not it was successful in the attempt we need not stop to inquire. Certainly, questions concerning the effect of purchase under foreclosure or the alternative taking of a voluntary deed as constituting payment, or as extinguishing the construction company's lien, were not considered or decided in the Portneuf-Marsh case. The point upon which the state court rested its decision is purely one of local law concerning which that court speaks with conclusive authority.

■ By the amendment of June 11, 1896, 43 U.S.C.A. § 642, the provision shown on the margin was added to the original Carey Act. [6] This statute, as was said in Portneuf-Marsh Valley Canal Co. v. Brown, supra, is no more than an enabling act, empowering the state to provide for liens by appropriate legislation. No federal question is presented by it.

■ Appellee has argued here, as it did in the state court, that a holding contrary to its view would result in the impairment of its contract right to full reimbursement for its construction costs. However, we think the state decision disposes of this contention. By its own act of taking over the land and water rights subject to its lien, in those instances where purchasers of water rights have defaulted, appellee has, in legal contemplation, been paid its construction costs.

Reversed.

---

[4] Under the terms of the Carey Act, patent to the donated lands is issued to the state upon the completion of an adequate irrigation system. 43 U.S.C.A. §§ 641, 642. The state in turn disposes of the lands to settlers at a nominal figure, and issues patents direct to the purchasers. §§ 41-1714 to 41-1722, Idaho Code Anno.

[5] The court undertook to reconcile the various provisions of c. 17, Title 41 of the Idaho Code, relating to the lien rights

of Carey Act companies and the method of their satisfaction.

[6] "A lien or liens is hereby authorized to be created by the State to which such lands are granted and by no other authority whatever, and when created shall be valid on and against the separate legal subdivisions of land reclaimed, for the actual cost and necessary expenses of reclamation and reasonable interest thereon from the date of reclamation until disposed of to actual settlers."